We'll call the next case. Case number 15-5754, United States of America v. Ronald Paul. All arguments not to exceed 15 minutes per side. Mr. Andrew C. Brandon for defendant appellant. Thank you, your honors, and may it please the court. My name is Andrew Brandon. I'm accompanied today by Isaiah Gant, and together we represent Mr. Ronald Paul. At this time, I'd like to reserve three minutes for rebuttal, if I may. That's fine, and you may proceed. Thank you, your honors. This is the case that the government chose as its test case. This case is the government's design, and with due respect to the government... We know they chose it as a test case. Well, we know it because when the... They chose it. Well, when the Kebido opinion, for instance, came out, we waved it in front of them, and they did not respond at all in saying this is the first of its kind. You have a problem, and that is there was a stipulation in the case that seems to have stipulated what is it, element one of the crime. And how do you get around... What exactly was that stipulation? The stipulation was that the quote is the defendant has stipulated that he was convicted of a prior sex offense and was required to register under SORNA. You may therefore accept that element as proven. Now, that came about, however, as a result of two orders. The first order is the court denying our motion to dismiss, and in its ruling saying this is not a defense to the first element, which is that he doesn't have to register as a sex offender. And then the government filed a motion in limine saying their first motion in limine in both the first trial and the second trial, saying we would like to incorporate that order and ask, and this is the government's request, it says the government hereby requests this court preclude defendant Ronald W. Paul from arguing that he was not legally obligated to register as a sex offender under either the Federal Sex Offender Registration and Notification Act or under the law of the state of Tennessee, and the court granted that. And so we were in a position... I mean, but you don't have to accept it. Why stipulate something that you don't think is true? Well, Your Honor, because at that point, the court granted the government's motion, and in the same hearing, that was where the court said all you can do is argue notice under element three. And that had been, again, litigated for three years. Why don't you take an exception to that and say to the court, well, that may be your view of what the law is, but we want to preserve our, this is an error, because what you now got is not only what you're considering to be an error, and it may very well be an error, but you've stipulated to the error. Your Honor, at that point, the court had made that ruling on four separate occasions, denying us over the course of three years of litigation, saying you don't get to make this argument. And so at that point, it's just a question of whether or not we're going to, how do you present this to a jury in a way that still preserves any chance that Mr. Paul has under element three of the SORNA offense, while conceding that the court has already ruled on element one of the SORNA offense, saying you cannot use that as an argument. And so I think a stipulation in the interest of judicial economy was an appropriate litigation strategy at the point. We should overlook this as a stipulation. I think that you should overlook the question that Mr. Pierce has raised about clear error versus abuse of discretion just because Mr. Paul was already in the position of having lost that issue. He had already lost that question. Lost it here. Well, that is correct, Your Honor. There are appeals. That is correct. And again, having argued this in so many motions to the court, including renewed motions, additional authority motions, it was our position that we had preserved that question. Regardless, I believe the question is, even if this court were to disagree, I think the question is preserved with respect to the motions to dismiss, the motions and the grants of the motions in Lemony, and those take us to the question of the plain language, the so-called plain language of SORNA, which we would submit is not particularly plain. You've got this dicta in this Supreme Court case that seems to me, at least on the surface, is very helpful to you that the plea agreement in the case that you don't have to register would be very helpful to you because of this dicta in this case, in this Supreme Court case. But how do we say that this dicta in the Supreme Court case means that you don't have to register when you've stipulated that you do? That's the problem, I see, in your case. You've got something that you could go on, it's pretty good, that the tight fit between the state and the federal, the fact that you have to register at the state level, no federal registration and so on, it's all tied to the state, and this is helpful, but why hasn't your stipulation done away with the problem? Your Honor, I think the appropriate term, just to briefly address the stipulation question, I think the appropriate term is the one raised by the government, which is contemporaneous objection. And again, the stipulation arose out of the precise hearing at which the court had already denied our motion to dismiss and then granted the government's motion in limine on the exact, the precise subject of that stipulation. And at that same hearing, we agreed to the stipulation based on the court's order, and it's my position that that is a contemporaneous objection to that, to the stipulation just by virtue of the fact that it was directly contrary to what we were arguing for in both the motion to dismiss and what the government was arguing for in the motion in limine. No, Your Honor, I was present there, but Mr. Gant did. Addressing the Kebido opinion, however, I think the way that we have to read that case, there are two possible ways. One is as addressing the language of the statute, and one is as addressing the constitutional issues. And the Kebido opinion really, I think, accords with the Feltz opinion from this case, where Kebido acknowledges, as I think we must, that SORNA punishes violations of its own terms as opposed to state law, but that the government has never prosecuted anyone who did not violate state law. And it goes on to say, as applied to an individual already subject to the Wetterling Act, like Kebido, SORNA makes few changes, suggesting that there would be problems if they were not already subject to another law. Feltz, from 2012 in this court, says that Feltz clearly did not comply with the Tennessee law in effect at the time, and thus there is no due process problem. It goes on to state that even assuming that Tennessee's registry in 2010 was not up to SORNA's standards, Feltz still could have registered with it. So they keep saying, and this was an argument that we made in that case, that if SORNA wasn't implemented yet, then how could he register under SORNA? And Feltz keeps saying the one exception here is that he already had a duty to register under Tennessee law. And so I think that that goes to this question, and again, it could go to the constitutional questions. There's no other case in which there's been a plea agreement or a finding that under state law you have no duty at all to register. I haven't found one. This is unique. I haven't found one, and the government hasn't found one to my knowledge either. I'm sure you've been looking. We have, Your Honor. And I do want to emphasize the due process issue here just because, again, even imagining a jury being faced with this question, is Mr. Paul required to register as a sex offender under this statute? Imagining a jury looking at this question. We did have a jury here, right? Yes, Your Honor. And the jury determination was that he knowingly failed to register, right? Yes, under the third element. Because the motion in limine ahead of time said he had a duty under federal law. That's correct. And Tennessee law does not control what federal law means or says or the duties, which to me makes ultimate sense. Well, anyway, the jury's finding that he knowingly did this. Doesn't that solve the problem? I don't believe so, Your Honor. Why not? Because it is true that the jury found that he knowingly failed to register, but that only applies to the third element and not to the question of did he in fact have to register. That's the initial thing. Okay. Did he have to? All right. He didn't have to register under Tennessee law. That's clear under the plea. But how can Tennessee affect federal law? If federal law requires registration, which it appears to do, how can Tennessee modify federal law? Well, the federal law applies mandates that, quote, a sex offender shall register in each jurisdiction where he resides. Jurisdiction is defined as the state. The state sex offender registry is defined as one that's maintained by the state. And so the ---- You're saying because the feds piggyback upon the state registry, that that somehow prevents the feds from requiring registration required by federal law because they piggyback on the same list? Well, two arguments, that and the fact that ---- Why should that make any difference? Well, it goes hand in hand with the due process issue, but how do you read a conviction? The definition of the term sex offender says you look to your conviction. His judgment of conviction says you do not have to walk into the Jackson County Sheriff's Office and register. He is a sex offender under Tennessee law, but the plea agreement said he did not have to register as a sex offender under Tennessee. That doesn't make him not a sex offender under federal law. Well, if federal law says that sex offenders must walk into the Jackson County Sheriff's Office and register, and his judgment says you don't have to walk into a Jackson County ---- It depends on where he has to walk in to register. If the federal government had a federal registration at the FBI office, it would be fine. You wouldn't have a case here? Is that what you're conceding? If the federal government had ever bothered to create a federal registration at all, which it hasn't, all it's done is tell states to conform their laws. Okay, if the federal government had created their own registration, there would be no problem? And said, this is what you do. There would be no problem? Then I don't think there would be a problem with a state order saying you don't have to go into your state office. All right, and you would concede that you wouldn't have a claim? I think we would have a ---- All right, I mean, that just kind of puts form over substance, doesn't it? I mean, because they're piggybacking here, they're limited, the federal government's rights are coexistent with the state law rights because they use the same database. I don't buy it. Well, that wasn't just my opinion. That was what the government told the jury in this case, that federal law requires you to comply with state law. That is what they said in the opening statement when they had to shorthand this. Well, we'll decide what the law is here. Understood. Okay. Thank you. Thank you. Good morning, Mr. Chief Judge, and may it please the Court, I'm James Pierce for the United States. SORNA creates a federal duty for a federally defined sex offender to register. Whatever Mr. Paul's state obligations were, he violated that federal duty when he failed to register. And that's a conclusion that flows from the language and the structure and purpose of SORNA itself. The penalty provision, Section 2250, says it applies in its first element to somebody required to register under SORNA. And then the definition for a sex offender, the content of a registration requirement, all of that is then found in Title 42, Sections 169, 11, and follow. And those are all federal requirements. It makes no difference what the state says or doesn't say. What about the stipulation and the problems that he's got there? What about the taking literally the language of this vote, whatever, however you pronounce it, which says that the federal registration requirement is violated only when the offender also violates state registration requirements. And literally the state registration requirement, rightly or wrongly, by the state judge there was waived if there is one that's mandatory. So there was in this case no state registration requirement existing to impose on this fellow, except I don't know what the, as I've been saying, I don't know what the, there seems to be a stipulation to the contrary. But just leaving that to one side, what about the literal language of the Supreme Court opinion? I agree it's dicta, but, you know, we're guided by dicta too, so. Certainly, Your Honor. And laying aside for now the questions about the validity of the non-registration condition in the state judgment. What that paragraph, starting from the whole paragraph, as Mr. Brennan did as well, the whole paragraph is discussing the differences between the Wetterling Act, which is the predecessor act to SORNA, and SORNA itself. And it's talking about how one of the things that the Wetterling Act did was precisely what Mr. Paul argues here. It actually incorporated a requirement to comply with state. The point that you're making here is that this case is talking about the weather, whatever, Wetterling Act and not the later amendment or SORNA. Right. This paragraph within Kebido is drawing a distinction between Wetterling and SORNA. And what that last sentence says, it doesn't quite say what Your Honor suggested it says. What it says is, although SORNA punishes violations of federal law, not state law, precisely the government's position, as far as we know, the government doesn't prosecute cases where there's not also a state law requirement. Now, that's right. By and large, there's an underlying state law requirement as well, and there's the federal duty. And that's what SORNA tries to do. SORNA does two things. On the one hand, it creates a federal duty to ensure that people don't go missing. That's the purpose of SORNA, keeping track of sex offenders. On the other hand, SORNA sets up a series of requirements using the spending clause to try to get states to strengthen their own registration systems. So, in essence, SORNA provides a safeguard for those instances when people who are absolutely sex offenders, and there's no question here that Mr. Paul is, that's a point that Judge Griffin raised, and this is a rapist of a then 11-year-old girl, there's no reasonable dispute under any definition. How many years ago? Well, He's now 75 years old. That's true, but under SORNA, he, because of the severity of his, has a lifetime registration requirement, and there's no dispute as to that. But the larger point is, this is exactly the type of case that SORNA is designed to treat. It's not some sort of test case or sort of exaggerated or pushing the boundaries of SORNA. It's a case where, because of whatever happened in the state system, a sex offender goes off the radar, at least as regards to Tennessee. So SORNA is there as that safeguard to ensure that Mr. Paul still has a registration obligation. That's what SORNA was designed to do. And that speaks to this sort of test case concern. For what it's worth, we cite on our brief, page 15. No, it's not a test case. This is what SORNA does, and to that point, page 15 of our brief, there's the Del Valle Cruz case. Now, it's not precisely the same factual posture, but it's relevant in the relevant respects here. In the Del Valle Cruz case, there was a sex offender defendant who had an underlying sex offense conviction from Oklahoma. He then went to Puerto Rico, where he failed to register, was prosecuted under 2250, entered a plea agreement. In the time while that case was pending on appeal, the state of Oklahoma Supreme Court issued a decision that essentially meant he no longer had a registration obligation under Oklahoma law. He was still a sex offender under Oklahoma law, but he had no registration obligation. And then Oklahoma authorities sent him some sort of a letter to make that. What is it about this case that makes the United States Attorney's Office exercise its prosecutorial discretion to go after this guy under SORNA in the face of his age, in the face of how many years ago it was, 20 years ago or so? What is it about this case that is propelling you to go forward? I can't speak precisely for the U.S. Attorney's Office, but I will say this. You're not in the United States Attorney's Office. That's correct, Your Honor. I work for the appellate section of the criminal division in Washington, D.C. What is exercising the appellate section of the criminal division so much in this case? What is it you're trying to prove here? Because this is not a very sympathetic case on the personalities involved. I would agree, Your Honor, but it's some of the things that we've already been discussing, which is were this court to adopt the interpretation of SORNA that Mr. Paul is articulating here, it would basically make SORNA entirely redundant to state law, and it would fail to then fulfill the purpose for which it was designed. It would fail to operate as an independent federal duty for any time that, for some reason, a sex offender goes off of a state registration network. That's why this is an important case. It's not a test case. It's a case that shows SORNA doing what it is supposed to do. The appellate section doesn't come into many cases like this. In that sense, it's sort of a test case, I guess. Well, it's a case that certainly is important as to how SORNA is construed. Now, overwhelmingly, federal courts have held that SORNA imposes a federal duty that operates distinct from other requirements, but admittedly, this is a factual pattern that is unusual. And speaking to that, to get back to that Del Valle Cruz case that I was discussing earlier, the First Circuit case, the sex offender defendant in that case raised essentially the same argument. He had pled guilty, so he had an appeal waiver as to the conviction, and he said, well, listen, my appeal waiver shouldn't apply because I no longer have a state registration requirement in Oklahoma. The First Circuit rejected that argument, as we hope this court does. That's the very purpose of SORNA, isn't it, to fill the gaps? I mean, before SORNA, I think there were state registrations here and there, but it was to do a national policy so people don't fall through the cracks. This very type of case, where his plea bargain lets him not register, well, that doesn't protect people in other states. That's absolutely correct, Judge Griffin, and that's the point that we're making here. Now, we're not pressing before this court, as we did below, some of the questions, and it's not obvious to me that he, in fact, didn't have a state obligation to register, but that's a difficult question. He didn't have a state registration. The police department, I guess, you go down to the police department and register normally. But what is the situation if there is no state registration office available? So you mean with regards to federal prosecution of an individual? Well, there's an affirmative defense under 2250, it's subsection B. If there's no state office, you get that affirmative defense? What the affirmative defense says is that if for reasons outside of the sex offender's control and to which he did not contribute, he cannot go in and enter a registration, then he's got a defense. And so, in other words, if there were no state office or if Mr. Paul had gone in and said, I think I have to register, and they had said, no, get out of here, we're not accepting your registration, then he could raise that affirmative defense. But certainly that wasn't the facts of the case here. You know, the federal government piggybacks on states a lot, and I'm thinking probably voting registration lists are piggybacked. I believe that's correct, Your Honor. And you could be, I mean, you could have different federal rights than you have state rights. I don't know. The fact that you piggyback doesn't mean the federal government is limited to the states' rights, the states' interpretations of their own laws. That's correct. I think if we established that as a matter of policy, we'd be creating havoc. I mean, the federal government always tries to save money where they can by doing the piggybacks. That's true. And with SORNA, because of possible Tenth Amendment and commandeering purposes, the federal government does that through the spending clause so as to avoid the types of constitutional concerns. But you're absolutely right, Judge Griffin. The federal government does that all the time. The Kebido opinion recognizes that earlier, and there's certainly no problem with that standing alone. The Kebido, that obviously is dicta. It's not the holding. We have to follow the holdings of the Supreme Court. I really doubt that the Supreme Court had this situation in mind when they wrote that dicta. And not only is that true, but what they write is they don't say, and state requirements must exist, a state registration. They say, as far as we're aware. And that's right. This is not, as I said earlier, this is an unusual fact pattern, but this is nonetheless exactly what SORNA is designed to do. SORNA also tries to create redundancy because it tries to strengthen the state systems as well, but where the state systems fall short in a case like this, SORNA is there to ensure that sex offenders need to register. Well, if the state systems were adequate, there'd be no reason for SORNA. That's precisely true. They weren't, and that's what SORNA was implemented by Congress. If there are no further questions, I'm happy to yield the balance of my time. What about this stipulation? Well, in our view, as we articulated in our brief, by failing to challenge the motion in Lemonet, not filing a response, not disagreeing with the court, and then going ahead and entering the stipulation, that's at least subject to plain error, if not waiver. But, frankly, even putting that aside, we believe that the stronger argument is simply that this is a federal law duty, regardless of whether or not he stipulates on Element 1. So I don't actually think it does much. That's what you want us to say in the letter. Because, based on the stipulation, it doesn't help you as a test case much. Well, I mean, listen, we want the court to affirm the conviction, and that's ultimately what's important. But we also believe that interpreting SORNA the right way is important. And if the stipulation is not satisfactory to the court, that ground alone, then certainly the federal law duty is something that is an important way to properly construe SORNA. Well, okay, I didn't focus, then, on the stipulation going in, because I really didn't think it was an issue. They filed a motion to dismiss on the ground that they're alleging on appeal, and that was denied. I mean, that preserves the issue, doesn't it? The fact that after their motion to dismiss is denied, the judge has procedural issues that they have to stipulate. I suppose, as a matter of forum, I stipulate but reserve my previously made objection as to the motion. I mean, they probably should keep doing that time after time. I agree, Judge Griffin. The forum over substance would get a bit – that would be an exaggerated position from the government. In our brief, we say because they didn't – When you stipulate and agree without a reservation that you have a duty to register, that is a pretty strong statement. It is strong, but I take their point and the one raised by Judge Griffin that they had been contesting this throughout. And in our brief, we say if this court were to construe that as preserving it, it's an abuse of discretion point, which basically means this court has to get to the merits of the argument on which we would urge this court to affirm on the separate federal duty. I guess we get around the stipulation. Because the motion to dismiss raises, as Mr. Brannon articulates, many of the arguments that underlie – or in fact, the argument that underlies the question of the use of the state law judgment or the non-registration condition in the state law judgment. That is sufficient to preserve the argument. But frankly, it actually – the motion to dismiss is sort of the core question. And whether or not they stipulate at trial is entirely distinct from the pretrial motion to dismiss. And this court has to decide a motion to dismiss regardless of whether it reaches the motion and eliminate question. So that's ultimately – there are two separate – at least two separate orders on appeal here. Stipulation doesn't do anything for the motion to dismiss. Thank you. Thank you. What about this motion to dismiss argument he makes? He says he obviously kind of wants us to get around the stipulation so we can win on his basic argument. And he says you've got to decide the motion to dismiss to make any difference that there was the later stipulation. We certainly agree with that. Just as a legal point, I think that this court – the district court set how this trial was going to go with that motion to dismiss and with the expansive order therein. And again, the discussion about the government's motion in limine is going to follow that order. The government's motion in limine expressly incorporated that. If we just decided on the motion to dismiss, he says that the statement by the Supreme Court is dicta, which of course it is, but that it's not talking about SORNA at all. It's talking about the previous weathering law. Well, I think it's talking about SORNA's application to the Wetterling Act. But again, the court was focusing at that point on the fact that the Wetterling Act created a preexisting registration duty. And that is, in fact, what that entire case is about. Justice Roberts writes separately to say I wouldn't be agreeing with this if it weren't for that. That is what that case is about. There was a preexisting duty. Now, I just want to briefly address the question of piggybacking. SORNA does not merely piggyback on state law. SORNA tells states what laws to pass and then says this is a violation of the failure to register under your state law. No, they don't. They withhold funding, don't they, if the state laws don't comply with that? Yes, Your Honor. They don't tell the state what their law is. But if they don't do what the federal government wants them to do, they're not going to get the funding. Yes, Your Honor. And that's what they always do, by the way. Yes, precisely. And I just want to emphasize this point very briefly. SORNA is absolutely a valid act under the spending clause as applied in cases like Feltz. Not in this case. Because at this point, the government's position is that the federal government is telling the Jackson County Sheriff's Department to do something that state law doesn't require them to do. That's absolutely a commandeering problem. They're saying take an administrative action that state law does not require you to do. This guy's relieved of the duty to register under state law. I didn't think that's what we're arguing. They're arguing there's a duty under federal law. I don't think the United States is contesting he has no duty under Tennessee law. But if he doesn't, then we have a commandeering problem. What does that mean? Well, under the Tenth Amendment, under Prince or under New York v. United States from 1992, these are Supreme Court opinions, federal government may not compel the states to enact or administer a federal regulatory program. The Constitution. All right. I can't see that they're doing that. They're only doing that, Your Honor, if they're saying you have no state duty to register, but the state office has to register you. So your theory is based on the fact that this is a spending law case. The government's power here arises under the spending clause, not under the commerce clause or another theory by which the federal Congress normally makes criminal laws. Because if it were, if it were just a normal federal criminal law, you would have the regular relationship between the federal law, which is you can't under certain circumstances murder people, and the state law of murder. And there is no double jeopardy as between the two of those, for example, in theory. And the reason you're saying that there is this close tie or piggybacking is because it's not that kind of criminal law, but it is a spending clause type of law. Is that the basis of it? That is correct. And the case of Feltz, and I believe it's called Coleman in the Sixth Circuit, address that. And, you know, we lost Feltz on a somewhat similar issue, but the important difference is that under Feltz, the court recognized— That's why you're claiming it's a commandeering situation. Yes, precisely. As the argument was made in the Affordable Care Act, for example. That's exactly right. Except there, it was this coercion with too much money. I mean, too much money was at stake. That's not the case here. The case here is that if this applies— Are there a bunch of other cases? I'm sorry, but this is a difficult, for me, problem. Are there other cases that make this distinction clearly between a spending law type criminal offense and a regular commerce clause or another basis for the criminal law? Because when you have the other basis, you have a whole set of theories about double jeopardy and the relationship between the state and federal law. But I'm a little at a loss to know if there's a separate theory about the spending clause. Yes, Your Honor. And I apologize for going over the time, but just to answer very briefly, there are sort of two sources. One is, I believe it's United States v. Prince. This is the Supreme Court case about mandating gun registry checks by state officials, the federal government saying the states have to do that, and that being improper commandeering. The second sort of source is that all of the cases, and I think the government would agree with this, where the circuit courts addressed the applicability of SORNA to states that had not yet implemented SORNA, including FELTS, they all closely addressed whether or not this was a valid act under the commerce clause or, excuse me, under the spending clause and whether it was commandeering. And I submit that they all did so with the recognition that it was not because these people were violating state laws that already existed. Thank you, Your Honor. Okay. Thank you, counsel, for your arguments today. The case will be submitted, and you may adjourn court.